UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 18-10193-WGY |
| | ) |
| NELSON CRUZ RODRIGUEZ | ) |
| CARTAGENA, a/k/a "INQUIETO" | ) |
| | ) |
| Defendant | ) |

**SENTENCING MEMORANDUM OF THE UNITED STATES**

The United States respectfully submits this memorandum in advance of the July 9, 2019, sentencing of the defendant, Nelson Cruz Rodriguez Cartagena ("Rodriguez"), a/k/a "Inquieto." Rodriguez, a homeboy with the Everett Locos Salvatrucha clique of MS-13, pled guilty to the charge of racketeering conspiracy on April 8, 2019, admitting his participation generally in the affairs of the MS-13 criminal enterprise and his involvement specifically in two separate murders committed by fellow MS-13 gang members. First, in the spring of 2015, Rodriguez confirmed the identity of a young MS-13 member known as "Fantasma," whom the gang suspected—incorrectly—of cooperating with law enforcement, which set in motion a series of events culminating in Fantasma's fatal stabbing on July 5, 2015 by two members of Rodriguez's clique. Second, the morning after three of his fellow clique members murdered a rival gang associate on January 2, 2016, Rodriguez orchestrated the concealment of the gun used in the murder. For his role in these two brutal, gang-fueled killings, and his active participation in the gang's concerted efforts to promote MS-13's mission of violence, Rodriguez faces a Guidelines sentencing range ("GSR") of 188 to 235 months. Consistent with the terms of the plea agreement and for the reasons set forth herein, the government asks that the Court sentence Rodriguez to 204 months—or 17 years—in prison.

### A. Offense Conduct

At the change-of-plea hearing, Rodriguez admitted that he was a full member, or homeboy, of the Everett Locos Salvatrucha ("ELS") clique of MS-13 and that he played a role in two murders committed in furtherance of the MS-13 racketeering enterprise. A complete statement of the offense conduct is set forth, without objection, in the presentence investigation report ("PSR"); the following is a summary of Rodriguez's participation in the two murders.

*First*, on July 5, 2015, two members of Rodriguez's ELS clique murdered 16-year-old Jose Aguilar Villanueva, a "paro," or probationary member, of ELS known by his gang name "Fantasma," by stabbing him to death in a park in Lawrence, Massachusetts. The two killers did not act alone; rather, they and several other members of the ELS clique, including Rodriguez, conspired to murder Fantasma because they believed, incorrectly, that he was cooperating with law enforcement. As an established homeboy, Rodriguez knew that MS-13 required its members to ferret out and kill anyone, including fellow gang members, who cooperated with the police. Accordingly, when the ELS leader, German Hernandez Escobar, a/k/a "Terrible," suspected that his gun arrest in March 2015 was no accident—that someone in the clique had "snitched"—Hernandez Escobar tasked Rodriguez with finding the informant in their midst.

Rodriguez duly complied, identifying Fantasma as the suspected informant, verifying his true name, and communicating that information to Hernandez Escobar and other ELS homeboys. Confirming Fantasma's identity as the person who had "snitched" on Hernandez Escobar was a high priority for ELS because, as clique member Julio Esau Alvalos Alvarado, a/k/a "Violento," testified: "If it was him, he had to be killed." After Rodriguez named

Fantasma as the suspected informant, other established ELS homeboys contacted MS-13 leadership in El Salvador for permission to "green light," or kill, Fantasma. Those homeboys subsequently devised a murder plan, which ultimately involved sending two ELS "chequeos," or MS-13 probationary members, to Lawrence to kill Fantasma. On the night of July 5, 2015, the two chequeos lured Fantasma to a park in Lawrence, stabbed him repeatedly, and left him bleeding to death while they fled to the ELS destroyer house in Somerville. They were met there by several ELS members, who celebrated the killing and who promised to promote the chequeos to homeboy for their murderous deed.

*Second*, on January 2, 2016, three young ELS members murdered a rival gang associate, Omar Reyes, by shooting and stabbing him under a bridge in Everett, Massachusetts. After the murder, the killers repeatedly contacted Rodriguez by phone; Rodriguez, in turn, called fellow ELS homeboy Jose Valle Flores, a/k/a "Mecha," and told him that ELS members had killed a kid in Everett. Shortly after that call, Rodriguez and one of the killers, Jose Vasquez Ardon, arrived at Valle Flores's apartment with the .38 caliber revolver that had been used to shoot Reyes concealed inside a plastic shopping bag. Rodriguez gave the gun to Valle Flores, who hid it in his bedroom so that it could not be found by the police. Meanwhile, Ardon bragged to MS-13 homeboy Mauricio Sanchez, a/k/a "Tigre," who also was present at Valle Flores's apartment, that they had killed a "chavala," or rival gang member, the night before. After Rodriguez and Ardon departed, Valle Flores showed Snachez the gun that Rodriguez left behind; Valle Flores then removed a spent shell casing from the plastic bag and flushed it down the toilet.

3

### B. Plea Agreement and Guidelines Sentencing Range

On April 8, 2019, Rodriguez pled guilty pursuant to a written plea agreement to a one-count indictment charging him with conspiracy to conduct enterprise affairs through a pattern of racketeering activity, in violation of 18 U.S.C. §1962(d). At the change-of-plea hearing, Rodriguez specifically admitted that, in furtherance of the MS-13 criminal racketeering enterprise, he participated in a conspiracy to murder that resulted in the death of Jose Aguilar Villanueva on July 5, 2015; and was an accessory after the fact to the murder of Omar Reyes on January 2, 2016. *See* PSR ¶8.

The Probation Department correctly calculated Rodriguez's GSR as 188 to 235 months in custody, based on a total offense level ("TOL") of 36 and a criminal history category ("CHC") of I. PSR ¶99. Specifically, the Probation Department calculated Rodriguez's TOL by determining the offense level applicable to each of the two underlying racketeering acts admitted by the defendant. PSR ¶¶46-47. For the conspiracy to murder resulting in the death of Jose Aguilar Villanueva, the base offense level is 43, minus four levels because Rodriguez was a minimal participant, resulting in an adjusted offense level of 39. PSR ¶¶48-53. For being an accessory after the fact to the murder of Omar Reyes, the adjusted offense level is 30. PSR ¶¶54-59. Pursuant to the Guidelines' grouping principles, Rodriguez's combined adjusted offense level is 39; minus three levels for acceptance of responsibility; resulting in a TOL of 36. PSR ¶¶61-67. With a TOL of 36 and CHC of I, Rodriguez faces a GSR of 188 to 235 months in prison. PSR ¶99.

Pursuant to the plea agreement submitted under Rule 11(c)(1)(B), the government agrees to recommend a sentence of not more than 204 months in prison and three years of supervised release. Plea Agreement ¶4(a)-(b).

C.  **Sentencing Recommendation**

Consistent with the terms of the plea agreement negotiated by the parties and in consideration of the statutory sentencing factors set forth in 18 U.S.C. §3553(a), the government recommends that the Court impose a sentence that includes a term of imprisonment of 204 months, a term of supervised release of 36 months, and a mandatory $100 special assessment. In light of Rodriguez's active participation in the affairs of the MS-13 racketeering enterprise and his role in two murders committed in furtherance of MS-13's violent mission, the recommended 204-month sentence is sufficient but not greater than necessary to achieve the goals of sentencing.

1.  **Nature and Circumstances of the Offense**

MS-13 is one of the largest and most violent criminal organizations operating in the United States today. *See generally* PSR ¶¶10-21. Rodriguez was an established and respected member of MS-13's Everett Locos Salvatrucha clique, itself one of the most active and violent cliques in Massachusetts. PSR ¶¶22-24. Violence defines MS-13, and it is through violence that the gang initiates and promotes new members, maintains order among its ranks, punishes cooperation with law enforcement, and seizes territory from rival gangs. PSR ¶21. MS-13 members rise through the gang's ranks—from paro to chequeo to homeboy—by proving their willingness and ability to commit significant acts of violence. *Id*. By pledging his loyalty to La Mara Salvatrucha, every MS-13 member contributes to the gang's culture of violence and furthers its mission to control everything. Achieving the status of MS-13 homeboy, as Rodriguez has, requires a commitment to violence of the highest order. Rodriguez embodied this violent ethos by providing and disseminating crucial information used to target a suspected informant for murder; and by attempting to protect fellow clique members from

prosecution by concealing a weapon used to murder a rival gang member. Viewed through the prism of violence that defines MS-13, Rodriguez's role in these two murders—although minimal in comparison to those who planned and ordered the killings and those who inflicted the fatal blows—merits a significant punishment.

### 2. History and Characteristics of the Defendant

Rodriguez was born in El Salvador in 1994. By his own account, he grew up poor, but in a loving, supportive, and safe family environment. PSR ¶77. He did not suffer any form of abuse as a child and has no criminal record. PSR ¶¶69-71, 77. In 2012, when he was 18 years old, Rodriguez entered the United States illegally. PSR ¶¶77-78. He traveled to Massachusetts, where some of his family members lived, and resided in Malden, Somerville, and Everett. PSR ¶78. On January 29, 2016, while law enforcement were attempting to locate and arrest another MS-13 member who had been charged with racketeering conspiracy, agents encountered Rodriguez at his apartment on 30 Birch Street in Everett. Rodriguez was arrested on immigration charges and quickly deported to El Salvador in April 2016—before his role in the murders of Jose Aguilar Villanueva and Omar Reyes was known to law enforcement. *See* PSR ¶¶78-79. Two or three months later, in the summer of 2016, Rodriguez again entered the United States illegally; he returned to Massachusetts and lived in Everett until he was arrested and charged in this case in June 2018.

It is unclear when or why Rodriguez joined MS-13, although it is clear that by 2015, he was a homeboy and active member of the ELS clique. Absent any significant mitigating factors, and there appear to be none, Rodriguez must be held accountable for his actions committed in furtherance of the MS-13 criminal racketeering enterprise.

### 3. Need for the Sentence Imposed to Afford Adequate Deterrence, Reflect the Seriousness of the Offense, and Promote Respect for the Law

The criminal racketeering activity committed by Rodriguez and his fellow MS-13 conspirators is undeniably serious and deserving of severe punishment. Rodriguez's co-conspirators in the murder of Jose Aguilar Villanueva were charged with and convicted of conspiring to commit murder in furtherance of the MS-13 racketeering enterprise in federal court; the four non-cooperating defendants who pled guilty received sentences ranging from 212 to 276 months in prison. *See* PSR ¶6. The three ELS members who killed Omar Reyes, and whom Rodriguez tried to protect from prosecution by concealing the murder weapon, were charged with murder in state court. To date, two of the three defendants have been tried and convicted of that murder and both defendants received life sentences, with the possibility of parole in either 15 or 25 years.

The evidence presented at the various federal and state trials included transcripts of audio recordings in which Rodriguez discussed MS-13 business (*e.g.*, acquiring weapons, selling drugs, and acts of violence) with his incarcerated clique leader; an MS-13 notebook seized from Rodriguez's apartment in January 2016 that contained the "Rules of the Clique" and the true names and gang rank of numerous ELS members; and the testimony of cooperating defendants confirming Rodriguez's status and active participation in gang-related activities, including the two murders discussed herein. The evidence paints a grim picture of the MS-13 racketeering enterprise generally and of Rodriguez's role in fostering the gang's culture of fear and violence specifically.

A sentence of 204 months, or 17 years, in prison, is a significant punishment and one that is just, reasonable, and appropriate for the serious crimes committed by Rodriguez. Such

a sentence, moreover, will send a message to Rodriguez and other MS-13 members that the gang's ruthless violence and disrespect for the law will not be countenanced.

## CONCLUSION

For all of the foregoing reasons, the Court should sentence Rodriguez to 204 months in prison. While it appears certain that Rodriguez will be deported upon the completion of his sentence, the government also requests that the Court impose a term of three years of supervised release.[1]

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: /s/ *Kelly Begg Lawrence*
Kelly Begg Lawrence
Christopher Pohl
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify the foregoing document was filed through the Electronic Court Filing (ECF) system on July 1, 2019 and will be sent electronically to the registered participants as identified in the Notice of Electronic Filing.

/s/ *Kelly Begg Lawrence*
Kelly Begg Lawrence
Assistant U.S. Attorney

---

[1] Under the facts and circumstances of this particular case—where the defendant twice illegally entered the United States; played a role in two murders in furtherance of a violent criminal enterprise that remains active in the United States; and has family ties to the United States, thus increasing the possibility of his return after deportation—the government submits that a term of supervised release will provide an added measure of deterrence and protection. *See* USSG §5D1.1(c), comment. (n.5).